460 F.Supp. 952 (1978)
Kenneth W. KELLIN, Plaintiff,
v.
ACF INDUSTRIES, Defendant.
Kenneth W. KELLIN, Plaintiff,
v.
BROTHERHOOD OF RAILWAY CARMEN, LOCAL NO. 365, Defendant.
Nos. 77-77C(4), 77-413C(4).
United States District Court, E. D. Missouri, E. D.
October 13, 1978.
*953 Joel Wayne Case, Manchester, Mo., for plaintiff.
Thomas C. Walsh and Hollye Stolz Atwood, Charles A. Werner and Marilyn S. Teitelbaum, St. Louis, Mo., for defendants.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits following a trial to the Court on alleged violations of 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. Plaintiff alleges that defendant ACF Industries, Inc. (hereinafter ACF), discriminated against plaintiff on the basis of race in the terms and conditions of his employment and in discharging him. Plaintiff claims that defendant Brotherhood of Railway Carmen, Local No. 365 (hereinafter Union) discriminated against him on the basis of race in failing to take to arbitration a dispute over disciplinary action taken against plaintiff by ACF. After consideration of the matter, the Court makes the following findings of fact and conclusions of law.

FINDINGS OF FACT
1. Plaintiff is a black citizen of the United States residing in the Eastern District of Missouri.
2. Defendant ACF is a corporation duly organized and existing under the laws of the State of New Jersey, and is authorized to do business in the State of Missouri.
*954 3. Defendant Union is a labor organization, and at the time of plaintiff's hire and discharge was the collective bargaining representative for the unit of employees in which plaintiff worked. Plaintiff was at all times relevant to this action a member of said Union.
4. Plaintiff was employed by ACF in 1960. He was later laid off for lack of work, but was rehired by ACF on April 11, 1966. Plaintiff was discharged on September 11, 1974.
5. On or about July 12, 1972, plaintiff signed, as an Executive Board member of the Union, vacation pay checks in the amount of $75.00 each to certain Executive Board members. Defendant Union presented testimony that while there might have been discussion among Executive Board members about issuing such checks, no vote was taken on the matter. At some time prior to May 23, 1973 plaintiff and other Executive Board members were informed by a Department of Labor agent that the vacation pay checks constituted an unlawful disbursement of funds. Prior to May 23, 1973, all Executive Board members who had received the checks repaid the $75.00, with the exception of plaintiff.
6. On or about May 23, 1973, Union Business Agent Herbert Goodrick filed internal Union charges against plaintiff for misappropriation of Union funds because plaintiff had cosigned the checks, received one of them, and refused to repay the $75.00 after he had been informed of the unlawfulness of the disbursement.
7. Pursuant to the Union Constitution and By-Laws, the president of the Union, a black, appointed three Union members, two blacks and a white, to serve as a Trial Committee. At this internal trial, both plaintiff, who was represented by another Union member, and the charging party (Goodrick) had an opportunity to present testimony, cross-examination and argument.
8. On June 21, 1973, the Trial Committee unanimously found plaintiff guilty of misappropriation of Union funds. Plaintiff was removed from Union office and was suspended from the Union for one year.
9. Pursuant to the Union Constitution, plaintiff appealed the Trial Committee's decision to the General President of the International, who affirmed the decision on December 18, 1973. Plaintiff then took an appeal to the General Executive Board of the International, which affirmed the decision on April 30, 1974.
10. At some time during late 1972 or early 1973, plaintiff filed an EEOC claim against ACF alleging that he was subject to disparate treatment because of his civil rights activities within the ACF plant. It is plaintiff's contention that disciplinary actions against him by ACF were stepped up after that time. Plaintiff's personnel record reveals that he received fewer warnings after the filing of the EEOC claim.
11. During the course of his employment, plaintiff received approximately 21 warnings from ACF for violation of company rules, two of which were voided upon protest by the Union. Plaintiff also received two three-day disciplinary lay-offs.
On three separate occasions prior to plaintiff's final discharge, plaintiff was suspended subject to discharge. The Union grieved each suspension, resulting in a reduction to a 31-day disciplinary lay-off in one instance; a voiding of the suspension and receipt of back pay for plaintiff on another occasion; and a conversion of another suspension into a mandatory sick leave without pay. The Union successfully arbitrated this action and won full back pay for plaintiff.
12. On September 11, 1974, plaintiff was directed by the Senior Plant Engineer, Daniel Beckmeier, through plaintiff's supervisor, John Oldham, to operate a fork lift. Plaintiff refused several times in the presence of Beckmeier, Oldham and "Preacher" Darragh. The plaintiff objected to working in the rain, despite his wearing the coat of the coat and bib raingear employees normally wore when working in the rain.
After ten minutes of pleading by Oldham, plaintiff made the lift. It took plaintiff one hour and fifteen minutes to do this job, *955 which normally took fifteen minutes. As a result of plaintiff's refusal to work and the length of time it took him to perform the job, production on shear No. 117 was interrupted for approximately one and one quarter hours.
13. In the course of the dispute about the operation of the fork lift, plaintiff directed profane language at his superiors. He also threatened Darragh, Oldham, and Beckmeier.
14. Plaintiff was charged with violation of five work rules, including failure to follow prescribed work procedures, wasting time during working hours, disorderly conduct, threatening a supervisor, and insubordination. Under the terms of the Collective Bargaining Agreement, plaintiff could have been discharged for violating any one of these rules.
15. Plaintiff was suspended subject to discharge by Jim Fuller, the Acting Manager of Labor Relations, for violating plant rules 3, 4, 15, 17, and 21. Mr. Fuller is black.
16. Pursuant to the Collective Bargaining Agreement, plaintiff grieved the disciplinary action, and a second-step discharge hearing was held on September 17, 1974. At this hearing, plaintiff admitted insubordination. As a result of the hearing at which both the company and the Union presented evidence, ACF through Miguel Lopez decided that the suspension would be changed to a discharge.
17. The Union filed a grievance on behalf of plaintiff with ACF's Industrial Relations Department on September 18, 1974. A third-step hearing was held on September 25, 1974, with the Union representing plaintiff. Robert Hans made the decision for ACF to uphold Lopez' decision to change the suspension to a discharge.
18. After the Union Business Agent, who is white, and the two Union committeemen, who are black, reviewed the evidence, they decided not to take plaintiff's grievance to arbitration.
19. On October 7, 1974, plaintiff filed an unfair labor practice charge against the Union, claiming that it failed to fairly represent him during the grievance procedure. This charge was dismissed by the Regional Director on November 11, 1974 for lack of merit. Plaintiff then appealed to the National Labor Relations Board, which denied the appeal on December 12, 1974.
20. Approximately XXXX-XXXX grievances have been filed by the Union during Herbert Goodrick's six years as Business Agent. Twenty-three of these were processed through an arbitration hearing. Of the 23, 13 involved discharges.
21. Plaintiff presented evidence that the discharge of a white employee, Robert Whitehead, was taken to arbitration under circumstances claimed to be similar to those in the case at bar. Defendants presented testimony that this employee did not file a grievance and that there was no arbitration. Defendants also presented testimony that Whitehead was charged with violating one rule because he was told to do two different things by two different supervisors. Defendants additionally produced testimony that Whitehead had a better overall record.
22. Other employees, both black and white, with better personnel records have been discharged for similar behavior. Plaintiff presented no evidence that white employees with similar records received less severe disciplinary action for the same or similar rules.
23. Plaintiff filed separate charges against the Union and ACF with the EEOC. Separate suits against the defendants were timely filed upon receipt of right to sue letters wherein plaintiff claimed that the Union failed to take his discharge to arbitration because of the Union's desire to rid itself of a vocal civil rights advocate, and wherein plaintiff alleged that ACF treated him differently in the terms of his employment and discharged him because of his race. The two suits were consolidated by order of the Court.

CONCLUSIONS OF LAW
1. Defendant ACF is an employer, and the Union is a labor union within the meaning of 42 U.S.C. § 2000e et seq.
*956 2. The Court has jurisdiction of the matter pursuant to 28 U.S.C. § 1343, 42 U.S.C. § 2000e et seq.; and 42 U.S.C. § 1981.
3. Plaintiff made a prima facie case of racial discrimination in his discharge by ACF. However, defendant ACF presented substantial evidence to establish that plaintiff was discharged for violation of five company rules, violation of one of which was admitted by plaintiff. Plaintiff did not establish that these reasons were pretextual in nature. McDonnell Douglas Company v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court concludes that plaintiff was discharged by ACF for good cause, and not because of his race.
4. Defendant ACF also rebutted plaintiff's prima facie case that he received harsher disciplinary action as a result of his filing an EEOC claim in 1972. Defendant ACF's evidence clearly established that white employees were treated no better than plaintiff; in fact, some with better records were discharged. Plaintiff's own personnel record establishes that disciplinary actions against him after filing the 1972 EEOC claim decreased rather than increased.
5. Plaintiff made a prima facie case of racial discrimination against defendant Union in their decision not to take plaintiff's grievance to arbitration. Defendant Union established, however, through statistics and testimony that the decision was clearly not based on race; rather it was a judgment based on the merits of plaintiff's claim. The case of Robert Whitehead was plaintiff's only evidence showing dissimilar treatment. However, it is the finding of the Court that plaintiff and Whitehead were not similarly situated employees.
Plaintiff did not show any racial motivation for the decision not to go to arbitration, or in any other way establish that the reasons claimed were pretextual in nature. Accordingly, the Court concludes that the Union's refusal to take the grievance to arbitration was not based on race.
6. Defendants ACF Industries, Inc. and Brotherhood of Railway Carmen, Local No. 365 shall have judgment against plaintiff, together with all costs herein incurred. Because the Court does not find that plaintiff's action was frivolous, unreasonable, unmeritorious or brought in bad faith, Christiansburg Garment Company v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), defendants' requests for attorneys' fees are denied.