Kenneth W. KELLIN, Appellant,

v.

ACF INDUSTRIES and Brotherhood of Railway Carmen Local No. 365, Appellees.

Nos. 78–1772, 79–1924.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1980.

Decided Aug. 20, 1980.

As Corrected Sept. 5, 1980.

John H. Quinn, III, St. Louis, Mo., for appellant.

Thomas C. Walsh, St. Louis, Mo., for appellee, ACF; Hollye Stolz Atwood, St. Louis, Mo., on brief.

Marilyn S. Teitelbaum, Schuchat, Cook & Werner, St. Louis, Mo., for appellee, Union; Charles A. Werner, St. Louis, Mo., on brief.

Before STEPHENSON and McMILLI-AN, Circuit Judges, and VIETOR,* District Judge.

McMILLIAN, Circuit Judge.

Appellant Kenneth W. Kellin appeals from orders of the district court granting

* The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

judgment to appellees ACF Industries, Inc. (hereinafter ACF) and Brotherhood of Railway Carmen Lodge No. 365 (hereinafter Lodge 365), and denying appellant's motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure. After a trial on the merits, the district court dismissed appellant's claims that appellees had violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, by discriminating against him on the basis of his race and by retaliating against him for opposition to practices made unlawful by the civil rights act.[1] We affirm, except as to the claim against ACF for retaliation in violation of § 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), which we remand to the district court for further consideration.

On appeal appellant argues that the district court erred in finding that ACF's discharge of appellant and Lodge 365's decision not to compel arbitration of the discharge were based on legitimate, nondiscriminatory factors and therefore neither appellee had discriminated against appellant on the basis of race or retaliated against appellant for protected activity.

I. *The Company*

Appellant, who had been a fork lift operator at ACF, claimed that ACF discharged him because of his race and because of his civil rights activities, which included the filing of a previous charge of discrimination at the Equal Employment Opportunity Commission (EEOC). ACF claimed appellant was discharged because of misconduct. At trial the racial discrimination issue basically amounted to a question of conflicting oral testimony by appellant and ACF representatives, although ACF presented some documents to support its claim that it had discharged white employees for less cause than appellant. The district court found:

. . . On September 11, 1974, [appellant] was directed by the Senior Plant Engineer, Daniel Beckmeier, through [appellant's] supervisor, John Oldham, to operate a fork lift. [Appellant] refused several times in the presence of Beckmeier, Oldham and "Preacher" Darragh. [Appellant] objected to working in the rain, despite his wearing the coat of the [coat-and-bib] raingear employees normally wore when working in the rain.

After ten minutes of pleading by Oldham, [appellant] made the lift. It took [appellant] one hour and fifteen minutes to do this job, which normally took fifteen minutes. As a result of [appellant's] refusal to work and the length of time it took him to perform the job, production on shear No. 117 was interrupted for approximately one and one quarter hours.

. . . In the course of the dispute about the operation of the fork lift, [appellant] directed profane language at his superiors. He also threatened Darragh, Oldham, and Beckmeier.

. . . [Appellant] was charged with violation of five work rules, including failure to follow prescribed work procedures, wasting time during working hours, disorderly conduct, threatening a supervisor, and insubordination. . . .

. . . [Appellant] was suspended subject to discharge by Jim Fuller, the Acting Manager of Labor Relations, . . . [who] is black.

. . . [subsequently,] ACF through Miguel Lopez decided that the suspension would be changed to a discharge.

\*      \*      \*      \*      \*      \*

. . . Other employees, both black and white, with better personnel records have been discharged for similar behavior. [Appellant] presented no evidence that white employees with similar records received less severe disciplinary action for the same or similar rules.

460 F.Supp. at 954–55.

■ Appellant now makes a lengthy argument that the district court was wrong in many of its findings. The specific points raised by appellant are weak. For example, appellant attacks the district court's conclusion that white employees were discharged

---

1. *Kellin v. ACF Indus.*, 460 F.Supp. 952 (E.D. Mo.1978).

for less cause than appellant. This conclusion was based primarily upon oral testimony of Miguel Lopez, ACF's Labor Relations Administrator at the time of appellant's discharge.[2] Appellant argues that this oral testimony was not sufficient evidence to convince the district court. But appellant's own case consisted of oral testimony which was no more substantial. Appellant also attacks the district court's conclusion that there was cause to discharge appellant under the collective bargaining agreement. Appellant points out that the agreement was not introduced into evidence. But union officials testified that they decided not to seek arbitration over appellant's discharge, because they considered the discharge warranted under the collective bargaining agreement. This testimony supported the district court's conclusion. Other claims by appellant are similarly unfounded.

Because appellant's evidence at the trial was almost entirely oral testimony, appellant is in a difficult position on appeal. This court cannot hear the live testimony or watch the witnesses. The trial judge does observe firsthand how sure the witness seems about the facts and whether the witness appears to be believable or evasive or lying. During the trial the judge may catch implied meanings and tones of voice that do not come across in the written transcript which we see on appeal. Therefore, when the trial judge considers conflicting testimony at trial and believes one side, appellate courts are very reluctant to make a contrary decision on the transcript of the testimony. *See Bowers v. Kraft Foods Corp.*, 606 F.2d 816 (8th Cir. 1979). We do not decide the case anew, but review the trial court's decision.

Under Fed.R.Civ.P. 52(a), we must accept the district court's factual findings unless they are "clearly erroneous." This court has explained

a finding of fact is only deemed clearly erroneous if it is not supported by substantial evidence, if it proceeds from an erroneous conception of the applicable law, or if on a consideration of the entire record the appellate court is left with the definite and firm conviction that a mistake has been made.

*Southern Illinois Stone Co. v. Universal Engineering Corp.*, 592 F.2d 446, 451 (8th Cir. 1979). The testimony and records supporting the court's findings of fact relating to racial discrimination were much more substantial than the version given by appellant. We are not convinced any mistake was made. The findings were based on a sound conception of the law, reflected in the district court's efforts to determine whether appellant's case of racial discrimination was countered by substantial evidence from ACF that the discharge was based upon factors that were not racially discriminatory. *Osborne v. Cleland*, 620 F.2d 195, 199 n.5 (8th Cir. 1980); *Burdine v. Texas Department of Community Affairs*, 608 F.2d 563 (5th Cir. 1979). *See also Kendrick v. Commission of Zoological Subdistrict*, 565 F.2d 524 (8th Cir. 1977); *Stevens v. Junior College District*, 548 F.2d 779 (8th Cir. 1977). Appellant was given an opportunity for rebuttal to demonstrate that the asserted reason was a pretext for racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

We are especially sensitive to the district court's firsthand impression of the testimony in a case like this, where the record before us contains only limited information, much of it in dispute. As appellant points out, ACF put on testimony of only one of the three supervisors who were present at the incident which led to appellant's discharge, and some testimony by ACF's personnel officials concerning appellant's misconduct may have been hearsay. On the other hand, much of appellant's case was

---

**2.** ACF also placed into evidence personnel files of three white employees who were discharged to support Lopez' testimony. We cannot say that the offenses for which these employees were discharged were much more serious than appellant's offense. For example, a security guard was discharged for leaving his post to have a meeting with a friend of the opposite sex in a locked office.

based upon his ideas about the motives of others. As far as the record before us shows, appellant made no effort to discover information before trial by deposition or by sending written interrogatories to the company or union, or by requesting documents of any kind. Therefore, appellant is on weak ground when he claims that ACF failed to provide possibly meaningful evidence such as testimony of supervisors, because appellant made no effort to seek this information. We do not know whether or not the supervisors were available within the court's jurisdiction or what their testimony may have shown.

We recognize, of course, that limitations on a discharged employee's resources may hamper his actual ability to gather information before trial because of expenses, whatever the theoretical possibilities under the rules. Where the merits of a case seem questionable it may not be reasonable for the complainant's attorney to devote uncompensated time generously with only a small probability she or he may obtain attorney's fees years in the future and only if the complainant prevails. In any event, because of the special circumstances, we have scrutinized the record with especial care in this case to determine if there is anything that may suggest there is more to appellant's case than weak, disputed oral assertions of discrimination.

We find in the record one piece of evidence which warrants further consideration by the district court of appellant's claim that ACF retaliated against him for filing an EEOC charge or for opposing alleged racial discrimination. We therefore remand the retaliation claim to the district court. In doing so we express no opinion, however, on the ultimate merits of the claim.

Appellant filed an EEOC charge of racial discrimination against ACF on December 27, 1971, according to EEOC records. Appellant testified concerning this 1971 EEOC charge at trial, but the testimony was not very clear as to the date of the charge. The 1971 EEOC charge may have been confused with a 1972 or 1973 television news appearance by appellant where he criticized allegedly discriminatory practices by ACF and Lodge 365. Moreover, ACF's attorney in closing argument below placed the time of appellant's anti-discrimination complaints in late 1972 or early 1973, although she acknowledged difficulties may have occurred earlier.[3] Appellant at trial produced no documentary evidence of the date of the 1971 EEOC charge. The district court found that the 1971 EEOC charge had been filed in late 1972. 460 F.Supp. at 954.

The number of disciplinary warnings given to appellant by ACF increased sharply in 1972, shortly after the December, 1971, EEOC charge. In 1972, according to ACF's files, appellant received ten disciplinary warnings, two of which were later voided by ACF, and a threat of discharge because a third party sought to garnish appellant's pay. (Most of these warnings appear to have covered relatively minor infractions such as tardiness and the like.) By contrast, in 1971 appellant received only two written warnings; in 1970, three written warnings; in 1969, one written warning; in 1968, two written warnings; and in 1967, two written warnings. It is therefore evident that the number of warnings received by appellant increased sharply after he filed his December, 1971, EEOC charge.

In 1973, however, appellant received five written disciplinary warnings (one of which was later voided), fewer than the ten warnings he received in 1972. Because the district court erroneously found that the 1971 EEOC charge was filed in late 1972 or early 1973, the court concluded that the number of warnings *decreased* subsequent to the EEOC charge. 460 F.Supp. at 954. The district court specifically relied on this decrease in finding appellant's retaliation claim against ACF meritless. *Id.* at 956.

---

**3.** However, when appellant moved for relief from judgment because of the district court's mistake as to the date of the 1971 EEOC charge, ACF responded in part by suggesting that both it and appellant had access to the correct date of the 1971 charge well before the trial.

After trial appellant's attorney on appeal [4] obtained evidence of the actual date of appellant's 1971 EEOC charge and made a motion for relief of judgment because of the district court's error in the date. ACF opposed the motion in part by asserting absence of evidence that ACF had knowledge of the 1971 EEOC charge prior to late 1972 or early 1973.[5] An employer must know about a charge before the employer can retaliate against the charging party, ACF explained, and in 1971 EEOC did not notify employers of the name of the complaining employee when serving the employer with the charge. The district court without comment denied appellant's motion for relief from judgment.

The record, however, does contain a reference to an EEOC charge in the minutes of the July, 1972, meeting at which a number of company personnel officials were present, including Robert Hans, then ACF director of personnel.[6] At the meeting, according to the minutes, appellant was told by a union official to "go to EEOC and withdraw your complaint." Neither appellant nor ACF explained this evidence to this court or the court below. At the time of this meeting appellant had pending the 1971 EEOC charge against the company and also a June, 1972, EEOC charge against Lodge 365; the reference might have been to either charge or perhaps to both. We do not attempt to resolve that question but instead consider it more appropriate in light

of the clear error on the date of the 1971 EEOC charge to remand to the district court.

In the letter informing appellant of his discharge, ACF stated that his past disciplinary record had been considered in the decision. Therefore, we think further consideration is needed on the question of whether the number of ACF disciplinary actions against appellant increased after the 1971 EEOC charge in retaliation against appellant for his civil rights activities. Appellant of course has the burden of showing that ACF had knowledge of the 1971 EEOC charge or other opposition by appellant to racially discriminatory practices, and that ACF was motivated by an intention to retaliate in disciplining him. *See generally* B. Schlei & P. Grossman, Employment Discrimination Law 436–41 (1976); *id.,* 1979 Supplement 124–25. The increase in disciplinary warnings subsequent to appellant's EEOC complaint is circumstantial evidence supporting appellant's claim. *See Mead v. United States Fidelity & Guaranty Co.,* 442 F.Supp. 114, 129–31 (D.Minn.1977). On the other hand, the increase in warnings may be attributable to an increase in actual misconduct by appellant. *See Johnson v. Fulton Sylphon Division, Robertshaw Controls Co.,* 439 F.Supp. 658, 670 (E.D.Tenn.1977). *See generally* Annot., 11 A.L.R. Fed. 316 (1972). We express no opinion as to what the outcome should be in this primarily factual determination or what further pro-

---

4. Appellant's appointed trial attorney withdrew from the case after the trial, and this court appointed appellate counsel. It was appellate counsel who made the motion in the district court for relief from judgment.

5. ACF also contended that the 1971 EEOC charge was not newly discovered evidence, *see* note 3 *supra,* and could not be considered as such in support of a motion for relief from judgment. However, we note that appellant sought relief from judgment not only because of newly discovered evidence, but also because a mistake had been made. See Fed.R.Civ.P. 60(b)(1) and (6). In this appeal we conclude that the district court's original finding that the charge was filed in 1972 is clearly erroneous.

   ACF also contends that appellant never pled a cause of action under 42 U.S.C. § 2000e–3(a). Appellant's complaint asserted jurisdiction to

"redress deprivation of rights secured by . . 42 U.S.C. [§] 2000e–3(a) . . . ." Moreover, ACF did not object to trial of the issue, and indeed argued about retaliation in closing argument to the district court, "[I]f one is to file EEOC charges or any complaints of discrimination, a company cannot be hampered from making justifiable legitimate personnel decisions merely because the man had filed charges against it." It is therefore too late for ACF to argue appellant failed to state a claim under 42 U.S.C. § 2000e–3(a). *See Nielson v. Armstrong Rubber Co.,* 570 F.2d 272 (8th Cir. 1978); 5 C. Wright & A. Miller, Federal Practice & Procedure § 1393 at 862 (1969).

6. The district court specifically found that Hans had reviewed and approved appellant's discharge. 460 F.Supp. at 955.

ceedings may be required by the district court in resolving it.

## II. *The Union*

Appellant's case against Lodge 365 consisted of his own oral testimony and that of two other witnesses, Charles L. Jenkins, Sr. (recording Secretary for Lodge 365) and Jerome J. Duff (an attorney who had done some work for Lodge 365 in 1972 or 1973). Appellant filed a grievance under the collective bargaining agreement protesting his discharge, but the company denied the grievance, and Lodge 365 refused to press the matter to arbitration. Appellant argues that his evidence should have convinced the district court that the union's decision not to arbitrate was discriminatory.

Jenkins' testimony concerned the reasons for the union's decision not to arbitrate appellant's discharge. Jenkins testified that he was at a hearing shortly after appellant's discharge on discipline of a white employee, Robert Whitehead. Whitehead had been given conflicting orders by two supervisors and refused one of them. He had been suspended subject to discharge for insubordination. Lodge 365 was represented at Whitehead's hearing by Herbert L. Goodrick (then business agent of the lodge), Jerome L. Borders (a local official) and Oscar Brown also (a local official); the three apparently were authorized to make decisions about Lodge 365's handling of grievances. Goodrick is white; Borders and Brown are black. Jenkins testified that, while the hearing was recessed, Goodrick then conferred alone with ACF representatives. Then, according to Jenkins, Goodrick reported to Borders and Brown that, if they took appellant's discharge to arbitration, they would have to take Whitehead's discipline to arbitration as well. The three then decided to compromise in Whitehead's case by accepting a two-week suspension and not to arbitrate appellant's discharge.

Goodrick and Borders testified for the union and gave a different version. They said that the Whitehead hearing was recessed for a caucus by management. To make use of the waiting time, Goodrick,

Borders and Brown discussed appellant's case which was then pending and decided that his grievance was meritless because his discharge was for cause. They then decided not to arbitrate on behalf of appellant.

Duff's testimony concerned past conflict between appellant and Goodrick. Duff testified that he had worked with the union in 1972 or 1973 when appellant was a local official; Duff observed animosity between appellant and Goodrick. Duff attempted to reconcile the two men, but failed he said, because of Goodrick's refusal to cooperate. Appellant testified that his differences with Goodrick were due to his race and civil rights activities, and that the same factors were behind the decision not to arbitrate his discharge. But Goodrick testified that the differences were due to appellant's misuse of unions funds (for which appellant had been dismissed from a union office). According to Goodrick, appellant's discharge was not arbitrated because there was just cause under the collective bargaining agreement for the discharge. Borders testified that he and Brown agreed with Goodrick on the merits of appellant's grievance.

■ Thus, the district court had before it conflicting testimony about the decision by Lodge 365 not to arbitrate appellant's discharge. The district court observed the witnesses and believed Lodge 365's version. We do not find this conclusion clearly erroneous.

Appellant also claimed that Lodge 365, by refusing to arbitrate his 1974 discharge, retaliated against him for his civil rights activities. But the district court's conclusion to the contrary is fully supported by the evidence. The mere fact that a union official urged appellant at the July, 1972, meeting to drop his EEOC charge would not conflict with the district court's conclusion that other factors led Lodge 365 to decide in late 1974 not to go to arbitration over appellant's grievance. In 1973, the lodge pursued another grievance to arbitration on appellant's behalf and won. We cannot find clearly erroneous the district court's conclusions that internal union disputes unrelated to civil rights matters were relevant

background for the union's conduct or that the union's decision was based on a legitimate valuation of the merits of appellant's grievance.

Accordingly, the judgment of the district court on appellant's claim against ACF under 42 U.S.C. § 2000e–3(a) is reversed and remanded for further consideration, and the district court's judgment is otherwise affirmed.