517 F.Supp. 226 (1981)
Kenneth W. KELLIN, Plaintiff,
v.
ACF INDUSTRIES, Defendant.
Kenneth W. KELLIN, Plaintiff,
v.
BROTHERHOOD OF RAILWAY CARMEN, LOCAL NO. 365, Defendant.
Nos. 77-77C(3), 77-413C(3).
United States District Court, E. D. Missouri, E. D.
June 8, 1981.
*227 Joel Case, Manchester, Mo., John H. Quinn, II, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for plaintiff.
Thomas Walsh and Hollye Stolz, St. Louis, Mo., for defendant ACF Industries.
Charles A. Werner, St. Louis, Mo., for defendant BRC Local No. 365.

MEMORANDUM AND ORDER
FILIPPINE, District Judge.
Plaintiff has moved this Court for a new trial or for the entry of new judgment on the issue of retaliation, as to which this Court entered judgment on March 31, 1981. Plaintiff contends that the Eighth Circuit, in remanding the issue of retaliation to this Court for further consideration, implied that this Court must hear evidence on the issue of retaliation and on the reason for the increased number of warning slips received by plaintiff after he filed his EEOC charge.
This Court devoted close attention to the decision of the Court of Appeals before entering judgment on March 31, 1981, and found no such implication. The Court of Appeals explicitly stated that it "express[ed] no opinion as to ... what further proceedings may be required by the district court in resolving [the retaliation issue.]" 629 F.2d 532 at 536-37. It appeared to this Court, and still does appear to this Court, that the Court of Appeals did not intend to require that plaintiff be given another chance to prove any of his claims, or that defendant ACF be given another chance to disprove any of plaintiff's claims. Rather it appears that the Court of Appeals simply desired that the totality of plaintiff's evidence as to retaliation should be re-evaluated by this Court in light of this Court's error as to the date plaintiff filed his EEOC charge against defendant ACF.
Plaintiff contends that this Court, 460 F.Supp. 952, in the original judgment entered in this cause on October 13, 1978, found that plaintiff had established a prima facie case of retaliation, and that because this Court relied on an erroneous EEOC charge filing date in finding that defendant ACF had rebutted that prima facie case, judgment must now be entered for plaintiff on the issue. However, this Court believes that in the light of intervening case law, this Court's original fourth conclusion of law, which implied that plaintiff had established a prima facie case of retaliation, must be reconsidered. The prima facie case of harsher disciplinary action to which this Court's judgment referred clearly concerned plaintiff's discharge. This Court concluded that plaintiff had established a prima facie case of retaliatory discharge simply by showing that he had been discharged some two years after he apparently had filed an EEOC charge.
However, there is lacking from the original judgment in this action any finding that defendant ACF was aware of plaintiff's EEOC charge at any point during his employment. In addition, it appears in light of Womack v. Munson, infra, that a prima facie case would include a showing *228 that there was a relatively short interval between the protected activity and the allegedly retaliatory act; the Court believes that its original finding of a prima facie case of retaliatory discharge, based on what appeared to be approximately a two-year interval, is simply not tenable.
The retaliation issue which was presented anew to this Court by the remand was whether or not plaintiff had proved that retaliation occurred at any point after his 1971 EEOC charge was filed. As implied by the Court of Appeals, if retaliation was manifested in the increased number of disciplinary actions prior to discharge, then plaintiff proved that retaliation tainted his discharge because defendant ACF clearly relied on plaintiff's entire disciplinary record in converting plaintiff's final suspension to a discharge.
The Court of Appeals stated that the fact that plaintiff received an increased number of warning slips subsequent to the filing of the EEOC charge constituted "circumstantial evidence supporting [plaintiff's] claim." 629 F.2d at 536. The Court of Appeals did not say that that fact constituted a prima facie case. A prima facie case of retaliation includes a showing of (1) a protected activity; (2) defendant's awareness of that activity; (3) subsequent adverse treatment by the employer; and (4) a time sequence between the protected activity and the adverse treatment short enough to justify an inference of retaliatory motive. Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir. 1980), cert. denied, 25 F.E.P. 232 (1981); see B. Schlei & P. Grossman, Employment Discrimination Law 436-41 (1976) and 124-25 (Supp.1979).
In Womack, supra, the plaintiff filed a Title VII lawsuit against his former employer, the county sheriff, after he had been hired by the state prosecutor. Two days after the suit against the sheriff was filed, the plaintiff was interrogated by the prosecutor about the suit; four days after this discussion, plaintiff was suspended; and twenty-one days thereafter he was fired. The Court of Appeals agreed with the District Court that this established a prima facie case.
In the instant case, the record does not show that defendant ACF was aware of plaintiff's December, 1971, EEOC charge before July 6, 1972, the date of the meeting at which reference to withdrawing the charge was made.[*] It is perhaps reasonable to infer, as plaintiff argues, that ACF knew of the EEOC charge by June 30, when plaintiff was suspended subject to discharge. Thus, the pattern of plaintiff's disciplinary record surrounding ACF's learning of the EEOC charge, is as follows:

 Period Discipline
 1967 2 Warning Slips
 1968 2 Warning Slips
 1969 1 Warning Slip
 1970 3 Warning Slips
 1971 1 Warning Slip; and 1 suspension
 subject to discharge, later
 converted to a 31-day layoff.
1972 (January through June 2) 5 Warning Slips (including two
 warnings which were later
 voided)
 ACF LEARNS OF EEOC CHARGE
1972 (June 30 through December) 4 Warning Slips; 1 3-day suspension;
 1 suspension subject
 to discharge, later voided; 1
 letter warning plaintiff of garnishments.
1973 (none before May 18, 2 Warning Slips; 2 3-day suspensions,
1973) one of which was
 later voided; and 1 suspension
 subject to discharge, later converted
 to a mandatory sick
 leave.
 1974 3 Warning Slips; and the final
 suspension, which was converted
 to a discharge.

The dates of the disciplinary actions taken in the latter period of 1972 are as follows: June 30  suspension subject to discharge (later voided); August 29  warning slip for leaving work station; August 31  warning slip for tardiness; September 6  warning slip for "irregular attendance and overall record"; December 4  warning slip for dishonesty in obtaining pass; December 8  *229 letter warning plaintiff that one more garnishment in a one-year period would subject him to discharge in accordance with the collective bargaining agreement; December 12  3-day suspension for habitual absenteeism. No further disciplinary actions were taken until May 18, 1973.
The Court believes that the above pattern establishes a prima facie case of retaliation with respect to those disciplinary measures taken in the latter period of 1972.[**] There were two suspensions during that period, and four warning slips, as opposed to five warning slips in the first period of 1972, which was approximately of the same duration. Cf. Hochstadt v. Worcester Foundation for Experimental Biology, 425 F.Supp. 318 (D.Mass.1976), aff'd 545 F.2d 222 (1st Cir. 1976) (plaintiff established prima facie case of retaliation by showing that she was discharged within six months of the settlement of her previous Title VII action against her employer and within one month after she complained of her poor academic evaluation to the employer's equal employment opportunity officer); Mills v. National Distillers Products Co., 17 F.E.P. 73 (S.D. Ohio 1978) (plaintiff's receipt of four reprimands within five weeks of filing EEOC charge gave rise to an inference of retaliation).
The Court does not find that plaintiff's prima facie case extends beyond 1972, however. To suppose that a retaliatory motive lay dormant for the five month period between December 12, 1972, and May 18, 1973, and that it suddenly reawakened, would be to draw an unreasonable inference. It is true that the plaintiff appeared on television to criticize defendant ACF after he had filed his EEOC charge. However, plaintiff's testimony fixed the date of his TV appearance as a few days before January 1, 1973 (Tr. at 62-63), and because there is no showing as to when ACF became aware of this appearance, it does not aid the plaintiff's prima facie case as to discipline suffered after 1972.
The Court thus turns to a consideration of the evidence concerning the merits of the disciplinary actions in the latter period of 1972. Plaintiff has argued in the instant motion for new trial that there is "no evidence one way or another" on this issue. Although there was virtually no testimony as to the merits of these incidents, the plaintiff's personnel file, introduced by defendant ACF, does contain some relevant information.
A report in the file, captioned "K. Kellin ... Attendence (sic) 1972," apparently prepared at or near year's end, indicates that plaintiff was late on August 29 and 31, 1972. This corroborates the warning slip issued August 31, 1972. The report entry on September 6, 1972, is "no report," which, considered together with the same entry on five days for the month of August, corroborates the warning slip issued September 6, 1972, for absenteeism. The report entry on December 11, 1972, is again "no report." This, together with the numerous other "no report" entries for 1972, substantiates the December 12, 1972 3-day suspension for "habitual absenteeism." In addition, the Court believes that the letter of warning on garnishments, which was not listed as part of plaintiff's disciplinary record in the letter from Lopez to Goodrick concerning the reasons for plaintiff's discharge, was not a disciplinary measure but was simply notice to plaintiff of the provisions of the collective bargaining agreement.
The Court finds that the above evidence rebuts plaintiff's prima facie case of retaliation, because it shows that two of the warning slips and the 3-day suspension were warranted. The remaining unsubstantiated disciplinary actions are fewer in number than the warnings received by plaintiff in the first period of 1972. Accordingly, the Court declines to amend the judgment entered March 31, 1981, and
*230 IT IS HEREBY ORDERED that plaintiff's motion for a new trial or for the entry of new judgment be and is DENIED.
NOTES
[*] Although both John Williams and Miguel Lopez, witnesses for defendant ACF, testified that they were aware that plaintiff had filed EEOC charges and had made a TV appearance (tr. at 293-94, 329), there was no evidence to show the date on which they acquired such knowledge.
[**] However, the Court notes that, insofar as it is possible to decipher the signatures of the various individuals who issued the warnings of the latter period of 1972, none of those individuals were present at the July 6, 1972 meeting, and there is no evidence which shows when those individuals learned of plaintiff's EEOC charge.