622 F.Supp. 1062 (1985)
Kathleen FLOOD, Plaintiff,
v.
BLEST COMPANY, d/b/a the St. Louis Magazine, Defendant.
No. 85-243C(6).
United States District Court, E.D. Missouri, E.D.
December 6, 1985.
Michael J. Hoare, St. Louis, Mo., for plaintiff.
Michael P. Casey, Lewis & Rice, St. Louis, Mo., for defendant.

MEMORANDUM
GUNN, District Judge.
Plaintiff brings this Title VII action, 42 U.S.C. § 2000e, et seq., alleging sex discrimination as the underlying cause for her employment discharge by defendant. Specifically, plaintiff contends that she was fired because of her pregnancy. Defendant denies the allegation, asserting, instead, the plaintiff's insubordination as the cause for the job termination.
Finding the credibility of fact issues in favor of the defendant and after consideration of the applicable law, the Court renders judgment for defendant and against plaintiff.

FINDINGS OF FACT
The defendant is a family-owned Missouri corporation which publishes for distribution in the St. Louis metropolitan area a magazine known as St. Louis Magazine. Mrs. Elizabeth S. Ferguson is the publisher of the magazine, and her daughter, Linda Ferguson Benoist, formerly advertising manager, is now president.
The plaintiff's first association with defendant was in the summer of 1978 as a student intern. In August 1979 she commenced full time work as an associate editor and about four months later was promoted to senior editor. In October of 1981, plaintiff married Greg Holzhauer, who was to become the editor of St. Louis Magazine in 1982.
When Greg Holzhauer became editor, plaintiff, as senior editor, was to assist him as co-overseer for publication of the magazine.
In April 1983, Mrs. Ferguson raised plaintiff's salary from $20,000 to $30,000 per year. At the time the raise was given, Mrs. Ferguson made the statement to plaintiff and her husband that "Kathy better not get pregnant." Mrs. Ferguson's *1063 defense of her statement was that it was made in a spirit of jocose. It was shortly thereafter, in April 1983, that plaintiff learned of her pregnancy which she announced to the magazine staff.
Plaintiff contends that upon learning of the pregnancy, Mrs. Ferguson became distant and the friendship that once existed between them faded noticeably. Mrs. Ferguson, on the other hand, professes that she had known plaintiff and her husband for many years and had a paternalistic feeling about them. She asserts that she had assumed from the time of the marriage that plaintiff and Greg Holzhauer would have children and that upon learning of the pregnancy she was delighted and wished the best for plaintiff and her forthcoming family. The Court finds Mrs. Ferguson's testimony to be credible in this regard.
The good relationship that had once existed between plaintiff and Mrs. Ferguson became somewhat tenuous. However, the Court finds this to be so by reason of plaintiff's attitude and action. For example, after Mrs. Ferguson had verbally reprimanded plaintiff's husband for a failure in performance of his editorial duties, plaintiff asserted that the publisher  her boss  was putting too much pressure on Mr. Holzhauer. There was also credible evidence that plaintiff was critical of Mrs. Ferguson's personal appearance and expressed an intense dislike for her to other employees, particularly Michaele Gold, a former managing editor.
Whatever bond existed between plaintiff and Mrs. Ferguson was completely riven on July 1, 1983. July 1 was press day  the hectic time of the month which the magazine was to go to press. Greg Holzhauer had been requested by Linda Ferguson Benoist to include in the publication an article which coincided with and related to certain advertising which had been sold. At the time, Mrs. Benoist was the advertising manager. Mr. Holzhauer had not provided for Mrs. Benoist's article, and she had become extremely upset. At Mrs. Benoist's urging, John Hoskins, the marketing manager, conferred with Mr. Holzhauer concerning the latter's dereliction to order. A heated discussion ensued between the two men. Mrs. Ferguson heard of the argument and intervened in an attempt to settle the dispute. At approximately the same time, plaintiff, obviously rankled, came into the room. According to her own testimony, she was in high dudgeon and with arms raised to display her ire, demanded to know why the parties were debating a matter on press day. According to the credible evidence, plaintiff told Mrs. Ferguson that she was putting too much pressure on her husband and that she should "get off his back." Plaintiff's actions brought immediate reproval from Mrs. Ferguson, who told the plaintiff "to shut up." Plaintiff's response to Mrs. Ferguson was: "No, Libby, you shut up." This expression of animus directed against her employer was made within hearing of other employees of the magazine.
Mrs. Ferguson was sufficiently upset over the exchange so as to leave the premises. She was advised by Mr. Hoskins that she should not have to endure such abuse. She also discussed the matter with her husband, an officer in the defendant corporation. His advice was to the effect that Mrs. Ferguson's authority had been challenged by plaintiff's act of insubordination in the presence of other employees. As a consequence, working with plaintiff would be difficult, if not impossible.
Three days later, on July 4, 1983, Mrs. Ferguson made telephone contact with plaintiff and advised her that she was being dismissed from the staff. Plaintiff, who at no time expressed regret for her actions, was told that she could continue to write for the magazine but could not work in the office.
Plaintiff places great stress on a comment made by Mrs. Ferguson regarding Julia Gaebe, a former employee who had quit working for defendant a few weeks after giving birth to a child. There is no dispute that some time after learning of plaintiff's pregnancy, Mrs. Ferguson stated that she "did not want another Julie Gaebe on her hands." This was in particular reference *1064 to Ms. Gaebe's practice of bringing her baby to work with her and not performing her assigned tasks in an efficient manner.
This, of course, would be a legitimate concern for an employer and does not reflect an antagonistic attitude by defendant toward plaintiff's pregnancy. The Court also finds that the defendant's policy regarding its employees who became pregnant and its working mothers was one of solicitude and absolutely without antagonism.
The Court finds from the credible evidence that the cause of plaintiff's dismissal was insubordination and that there was no discriminatory motive by reason of pregnancy behind defendant's termination of plaintiff from employment.

CONCLUSIONS OF LAW
This action is brought under Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e, et seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5(f)(e). In a Title VII case alleging sex discrimination, the burden is upon the plaintiff to allege and prove that she was the victim of intentional or purposeful discrimination on the part of the defendant. The Supreme Court has clearly articulated the basic allocations of burdens and order of presentation of proof in a case alleging intentional employment discrimination under Title VII:
"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to `articulate some legitimate, nondiscriminatory reason for [his action]....' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 [101 S.Ct. 1089, 1093, 67 L.Ed.2d 207] (1981) (citation omitted).
To establish a prima facie case of discriminatory discharge, a plaintiff must show that (1) she was a member of a protected class, (2) she was capable of performing the job, and (3) she was discharged from the job. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Smith v. Monsanto Chemical Co., 770 F.2d 719, 722 n. 2 (8th Cir.1985); Johnson v. Bunny Bread Co., 646 F.2d 1250, 1253 (8th Cir.1981).
Plaintiff seeks recovery specifically under 42 U.S.C. 2000e(k) which prohibits discrimination against women on the basis of pregnancy.
The plaintiff also asserts  and correctly so  that in a Title VII case such as this, the "plaintiff proves [her] claim of unlawful discrimination by showing that `a discriminatory reason more likely [than not] motivated the employer.'" Bibbs v. Block, 749 F.2d 508, 511 (8th Cir.1984) (rehearing en banc April 29, 1985) (quoting Texas Department of Community Affairs v. Burdine, 450 U.S., at 256, 101 S.Ct., at 1095).
Thus, plaintiff argues, asserting Bibbs, that if her discharge was motivated in any way by her pregnancy, she has made her case.
However, the Court finds that plaintiff's pregnancy was not a discernible factor in the decision to terminate her employment. There is no credible evidence for a contrary finding.
The sole reason for plaintiff's discharge was her positive action of insubordination on July 1. That reason for discharge is not pretextual and serves as an absolutely legitimate basis for terminating her employment. Guy v. Swift & Co., 612 F.2d 383, 386 (8th Cir.1980) (single incident of insubordination serving as basis for discharge); Kellin v. AFC Industries, 629 F.2d 532, *1065 534 (8th Cir.1980); Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1259-60 (7th Cir.1985).
Plaintiff's pregnancy had nothing to do with her discharge. She was terminated because of her insubordination. Richardson v. Circle K Corp., No. LR-C-83-1069, (E.D.Ark. Mar. 28, 1985), aff'd 782 F.2d 1049 (8th Cir.1985) (unpublished per curiam). She had challenged her employer's authority in the presence of other employees in a manner which was not in the best interest of the employer. There was no credible evidence that plaintiff's conduct was generally accepted or could be expected to be tolerated.
Plaintiff's contention that she was discriminated against on the basis of her pregnancy is rejected.
Judgment for defendant.