673 F.Supp. 1458 (1987)
Pamela J. McLEAN, Plaintiff,
v.
SATELLITE TECHNOLOGY SERVICES, INC., Defendant.
No. 87-0583C(6).
United States District Court, E.D. Missouri, E.D.
November 24, 1987.
Henry Gerhardt, Michelle A. Sheehan, St. Charles, Mo., for plaintiff.
*1459 James N. Foster, Jr., McMahon, Berger, Hanna, Linihan Cody & McCarthy, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
GUNN, District Judge.
This action is brought under 42 U.S.C. § 2000e, et seq., Title VII of the 1964 Civil Rights Act, as amended. Plaintiff contends that she was wrongfully terminated from defendant's employ after she spurned romantic advances by her supervisor. The following findings of fact and conclusions of law are entered pursuant to Rule 52(a), Fed.R.Civ.P.

FINDINGS OF FACT
Defendant Satellite Technology Services, Inc. is a corporation subject to the provisions of 42 U.S.C. § 2000e, et seq. On November 12, 1985, plaintiff, a female, was employed by defendant and assigned as an assistant sales person to work in the St. Louis office under the supervision of Michael Manning. Her work responsibilities required telephone contact with customers and distributors of defendant's products.
The incident giving rise to plaintiff's complaint occurred on December 13, 1985 at a business seminar meeting in Orlando, Florida. Manning was present to make a presentation. Plaintiff was to observe so that she would ultimately be able to conduct a seminar. After one day's work, plaintiff, Manning and another of defendant's employees had dinner and a period of refreshment in the hotel's hot tub. Manning suggested to plaintiff that he would like for her to review his presentation with him. They then went to plaintiff's room and sat together on a couch. Plaintiff was clad in a swimming suit and towel; Manning was wearing shorts and a shirt.
According to plaintiff, while Manning was discussing the talk he was to give the next day, he placed his arm around her back, touched her leg and made an effort to kiss her oncean effort that plaintiff testified was easily rebuffed. Manning then left the room.
Manning categorically denies making any type of advance to plaintiff and insists that any type of dealings with plaintiff were strictly within the bounds of propriety as a supervisor and co-worker. Based on facts which follow, the Court is inclined to believe Manning.
Following the Orlando trip, plaintiff complains that Manning was cool to her, and she attributes his attitude and her ultimate termination from employment as stemming from her rejection of Manning's advance. The Court finds that there was a multitude of legitimate business reasons for terminating plaintiff's employment and that her discharge was not based on any sexual harassment brought about by any purported romantic advance by Manning.
It is undisputed that plaintiff was anything but demure, that she possessed a lusty libido and was no paragon of virtue. From the beginning of her short term of employment with the defendant in November 1985 to its end in February 1986, plaintiff displayed a remarkable lust for those of the opposite sex. She displayed her body through semi-nude photographs or by lifting her skirt to show to her supervisor an absence of undergarments. Also, during working hours, she made offers of sexual gratification or highly salacious comments to employees, customers and competitors alike, though warned by Manning not to do so. There was uncontroverted evidence of acceptance of her offers.
Though specifically ordered by Manning to refrain from an obviously flirtatious telephone relationship with an employee of a customer, plaintiff flouted the order and carried on the dalliance.
The Court also finds that in disobedience to her supervisor's direction, plaintiff frequently entertained nonbusiness visitors, habitually engaged in overextended lunch periods and made excessive use of the telephone for personal calls.
To show utter disdain for her supervisor, plaintiff told Manning that his superior had referred to him as a "wimp" and planned to replace him with plaintiff. According to the superior, this statement was untrue.
*1460 It was plaintiff's activities at a trade show in Las Vegas, Nevada on February 22-23, 1986 that finally led to her discharge. At the trade show, plaintiff missed meetings she was expected to attend, was not at her job station a large percentage of the time and continued her libidinous behavior, acknowledging that she was "intimate" with an employee of a customer at least two or three times, entertaining him in her hotel room during the period of the trade show. This was despite orders from her supervisor to abstain from promiscuity with customers or dealers.
On her return from Las Vegas, plaintiff was summarily discharged from her employment by the defendant's president. His basis for the termination was plaintiff's performance at the Las Vegas trade show as related by James Uyeda, defendant's chief operating officer, who had attended the trade show and observed plaintiff's actions. Specifically, plaintiff was terminated because she had missed work and meetings at the Las Vegas trade show.
The Court specifically finds that there was no sexual harassment of plaintiff by her supervisor Manning. From plaintiff's character, it is apparent that plaintiff would have welcomed rather than rejected Manning's advance, if he did indeed do so. But the Court finds that Manning made no sexual advance.

CONCLUSIONS OF LAW
This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5(f)(3).
The order and allocations of proof in an employment discrimination case are as follows:
(1) The plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination;
(2) If plaintiff successfully proves the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973);
(3) If defendant carries this burden, the plaintiff has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination. The defendant need not persuade the court that it was actually motivated by said reasons, but it is sufficient if defendant's evidence raises a genuine issue of fact. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).
It is important to note that the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. See Hawkins v. Anheuser-Busch, Inc., 697 F.2d 810, 814 (8th Cir.1983) (citing Burdine, 450 U.S. at 255-56, 101 S.Ct. at 1094-95).
Plaintiff contends that she was sexually harassed by her supervisor, Michael Manning, and then terminated because she rejected his attempt at amour. The Court, upon consideration of the essential elements indited in Moylan v. Maries County, 792 F.2d 746, 749-50 (8th Cir.1986), concludes that plaintiff has failed to carry her burden of establishing that there was any sexual harassment in this instance. The credible evidence does not support the situation as she contends. Simply stated, plaintiff was not subjected to any unwelcome sexual harassment. In this regard, Gan v. Kepro Circuit Systems, 28 Fair Empl.Prac.Cas. (BNA) 639 (E.D.Mo.1982) [Available on WESTLAW, DCT database] is directly on point. Indeed, it is plaintiff who bears the responsibility for whatever sexually suggestive conduct is involved in this case.
The inquiry can cease there, and judgment should be for defendant. McDonnell Douglas v. Green, 411 U.S. at 802, 93 S.Ct. at 1824. Plaintiff has failed to make her prima facie case.
But to go a step further, defendant has stated nonpretextual, legitimate and absolutely nondiscriminatory reasons for its discharge of plaintiff. She was insubordinate *1461 and displayed total disrespect for her supervisor, Michael Manning, which would serve as a legitimate basis for her termination. Flood v. Blest Co., 622 F.Supp. 1062, 1064-65 (E.D.Mo.1985), aff'd sub nom. Flood v. St. Louis Magazine, 802 F.2d 464 (8th Cir.1986); Clay v. Consumer Programs, Inc., 576 F.Supp. 185, 190 (E.D. Mo.1983), aff'd, 745 F.2d 501 (8th Cir.1984).
From the credible evidence, it is also abundantly clear that plaintiff was terminated because of poor work performance, attitudes and habits, e.g., excessively long lunch hours, personal telephone calls, entertaining nonbusiness visitors during working hours, being inattentive to her work, particularly at the Las Vegas trade show. As such, her termination was proper, Johnson v. Yellow Freight System, Inc., 734 F.2d 1304, 1307-08 (8th Cir.1984); Olin v. Prudential Ins. Co. of America, 798 F.2d 1, 8 (1st Cir.1986).

ORDER OF JUDGMENT
Pursuant to the memorandum opinion filed herein on this date,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment be and it is entered in favor of defendant, costs to be paid by plaintiff.