**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**MID–MINNESOTA FEDERAL CREDIT UNION, Defendant.**

Civ. No. 5–89–84.

United States District Court,
D. Minnesota,
Fifth Division.

March 31, 1992.

See also, 820 F.Supp. 432.

---

Reuben Daniels, Jr., Supervisory Trial Atty., Dennis R. McBride, Senior Trial Atty., Marvis L. Hicks, Trial Atty. and E.E.O.C., Milwaukee, WI, for plaintiff.

Barbara Jean D'Aquila, Cory Larsen Bettenga, and Moss & Barnett, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion for summary judgment. Based on the file, record and proceedings herein, defendant's motion is granted.

**1.** The provisions of Title VII pertinent to this case are codified at 42 U.S.C. §§ 2000e–2 and 2000e(k). 42 U.S.C. § 2000e–2 provides, in part, that:

(a) It shall be an unlawful employment practice for an employer—
(1) to ... discharge any individual ... because of such individual's.... sex ....

## BACKGROUND

Plaintiff Equal Employment Opportunity Commission ("EEOC") represents Leslie Valesano ("Valesano") in her discrimination suit against defendant Mid–Minnesota Federal Credit Union ("Mid–Minnesota"). Valesano was employed as a bank teller by Mid–Minnesota from August 9, 1982, until she was fired on October 21, 1985. The EEOC alleges that Mid–Minnesota fired Valesano because she was pregnant and that firing her for that reason violated her rights under Title VII.[1] In support of its claim, the EEOC contends that prior to Valesano's becoming pregnant, her supervisor, Patricia Nyberg, told Valesano that pregnant women and mothers with small children should not be working and that such employees were a burden to employers. The EEOC cites Valesano's deposition in support of that allegation.

Q. Did anyone indicate that it would be problem if you became pregnant if you worked at the credit union? ..

A. [Valesano] No, but Pat Nyberg had told me—made a statement about not wanting to work with a pregnant woman.

Q. When did Pat Nyberg make a statement that she did not want to work with a pregnant woman?

A. [Valesano] This summer.

Q. What summer?

A. [Valesano] Of '85.

Q. When in the summer of '85?

A. [Valesano] I don't recall when it was said.

Q. Was it said before you knew you were pregnant?

A. [Valesano] Yes.

Q. What did she say?

42 U.S.C. § 2000e(k) provides, in part, that:
The terms "because of sex" or "on the basis of sex" include ... because of or on the basis of pregnancy, childbirth, or related medical conditions ...

A. [Valesano] She said that she would not—she didn't think a pregnant woman should work and that she would—it would be a—these aren't her exact words—but like a burden to her—the employer.

\* \* \*

Q. How did the conversation occur?

A. [Valesano] I think we were talking about a pregnant woman applying for a job, and she felt that if she was interviewer—or she felt that if a woman was pregnant and not showing, that she had every right to tell that employer that she was pregnant.

(Valesano Aff. at 510–11).

The EEOC contends that after Valesano announced that she was pregnant in late August 1985, Nyberg engaged in a campaign to discriminate against Valesano because she was pregnant, culminating in the termination of her employment. As evidence of that discrimination, the EEOC alleges Nyberg severely reprimanded Valesano for closing her teller window early on September 6, 1985, and that she was responsible for getting the president of Mid–Minnesota to place a memorandum of the incident in Valesano's personnel file, while two other tellers who also closed their windows at the same time only received a less severe warning. The EEOC also alleges that Nyberg gave Valesano assignments in addition to her teller duties when Valesano was busy and other tellers were not as busy and that Nyberg reprimanded Valesano for pre-balancing her checks before the end of the day even though other tellers often pre-balanced their checks and were not similarly reprimanded. The EEOC thus contends that it has proffered sufficient evidence to raise a material fact dispute concerning Mid–Minnesota's intent when it fired Valesano and that the material fact dispute precludes the court from granting Mid–Minnesota's motion for summary judgment. Mid–Minnesota argues that it fired Valesano because of:

her lack of cooperation in getting along with people; her tendency to be combative and defensive; her failure to be open to constructive criticism; her mishandling of customer relations with respect to some customers; her pre-balancing [of checks] when being asked on various occasions by the head teller to refrain from doing so; her moodiness; her unwillingness to respect authority; and her insubordinate remarks to the head teller.

(D'Aquila Aff. Ex. B, Int. Ans. 11). As an example of Valesano's insubordination, Mid–Minnesota contends that on October 10, 1985, Nyberg gave Valesano some envelopes to stuff and that Valesano asked another teller to do the project. When Nyberg approached Valesano to inquire why she gave the project to another teller, it is undisputed that Valesano told Nyberg "to get off her back." As another example of insubordination, Mid–Minnesota contends that Valesano often did not follow her supervisor's reasonable orders. Mid–Minnesota thus maintains that it fired Valesano for legitimate business reasons and that no genuine issues of material fact exist that would preclude the court from granting summary judgment in its favor.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986);

Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider. Mid–Minnesota's motion for summary judgment.

To establish a prima facie case of discriminatory discharge, Valesano must show that (1) she was a member of a protected class; (2) she was capable of performing the bank teller job; and (3) she was discharged from the job. *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 722 n. 2 (8th Cir.1985); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1253 (8th Cir.1981); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). If the EEOC can demonstrate a prima facie case, the burden of production shifts to Mid–Minnesota to articulate a legitimate, non-discriminatory reason for the adverse action. If Mid–Minnesota meets that burden, the EEOC must produce evidence to show that the reason proffered by Mid–Minnesota was merely a pretext for the discriminatory discharge. *McDonnell Douglas*, 411 U.S. at 802–805, 93 S.Ct. at 1824–26; *Johnson*, 646 F.2d at 1253.

Mid–Minnesota contends that the EEOC is unable to establish a prima facie case of discriminatory discharge because Valesano was not a member of a protected class and because Valesano was not qualified for her position as a teller and that the court should thus dismiss the EEOC's claim. The EEOC argues that summary judgment on the basis that it has not established a prima facie case of discriminatory discharge would be premature because Valesano was pregnant when she was fired, the evidence indicates that she was capable of performing the bank teller job, and Mid–Minnesota terminated her. The court, however, finds that it need not determine whether the EEOC established a prima facie case of discriminatory discharge. Even assuming that the EEOC established a prima facie case of discriminatory discharge under *Smith*, the court concludes that summary judgment is warranted because the EEOC has not adduced evidence indicating that Valesano's pregnancy was a factor in the decision to terminate her employment.

Valesano's act of insubordination on October 10, 1985, during which she told her supervisor to "get off her back" as well as her failure to follow her supervisor's orders provided a legitimate, non-discriminatory reason for terminating her employment. *See Guy v. Swift & Co.*, 612 F.2d 383, 386 (8th Cir.1980) (single incident of insubordination serving as a basis of discharge); *Flood v. Blest Co.*, 622 F.Supp. 1062, 1064–65 (E.D.Mo.1985) (same), *aff'd*, 802 F.2d 464 (8th Cir.1986). Thus, even though Valesano may have been in a protected class, Mid–Minnesota did not violate Title VII by firing Valesano because the evidence indicates that it based its decision on Valesano's insubordination and her difficulty in getting along with her supervisor. The EEOC has not satisfied its burden of producing evidence that Mid–Minnesota's decision to fire Valesano was a mere pretext for discrimination. The statements made by Nyberg to Valesano before Valesano became pregnant and isolated incidents between Valesano and Nyberg are not sufficient to create a material fact dispute regarding Mid–Minnesota's intent when it fired Valesano.

Based on the foregoing, the court concludes that the EEOC has failed to establish that Mid–Minnesota's termination of Valesano's employment for insubordination was a pretext for discrimination. Accordingly, **IT IS HEREBY ORDERED** that Mid–Minnesota's motion for summary judgment is granted.