Mary ROBERTSON, Plaintiff,

v.

DOCTORS HOSPITAL affiliated with
Hospital Corporation of
America, Defendant.

No. LR–C–82–508.

United States District Court,
E.D. Arkansas, W.D.

Sept. 13, 1983.

Melva Harmon, Lavey, Harmon & Burnett, Little Rock, Ark., for plaintiff.

Carol A. Eller, and Ronald C. Henson, Ford & Harrison, Atlanta, Ga., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROY, District Judge.

1. This action was filed by a former black female employee of the defendant who was discharged on June 14, 1982. Plaintiff alleges that she was discharged because of her race, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, *et seq.* She seeks reinstatement, back pay, restoration of benefits, costs, attorneys' fees, and injunctive relief prohibiting defendant from discharging persons because of their race.

2. Plaintiff was employed by the defendant from August 7, 1978, until June 14, 1982. Having been initially hired as an EKG technician, she was promoted to cardiology assistant on January 25, 1980. On February 8, 1981, she was promoted to advanced cardiology assistant. From April 16, 1982, until her discharge she was the acting supervisor of the noninvasive cardiology department. Her duties included stress testing and other cardiology tests in addition to her supervisory duties.

3. She was named Employee of the Month for Doctors Hospital· in November 1981.

4. Pay increases are awarded on the basis of merit and annual performance evaluations. The plaintiff received pay increases on thirteen occasions while at the hospital. She received an above standard performance rating on all of her evaluations.

5. David Clint Matthews, a white male, is an assistant hospital administrator who supervises several departments, including noninvasive cardiology. Each department has its own supervisor or director who reports to Matthews.

6. On June 14, 1982, the plaintiff was discharged by Matthews and Steve Tedder, a white male, who is director of personnel for the defendant. She was fired for falsification of her time sheet. She noted on her time sheet that she had worked 9.5 hours on Monday, May 31, 1982, which was Memorial Day and a day that she had not worked.

7. On Friday night, June 4, 1982, she completed her time sheet for the week beginning Monday, May 31, 1982. The hospital requirement that sheets are to be filled out daily is not uniformly followed and is not a dischargeable offense. For May 31, the holiday, she noted that she had worked from 7:00 a.m. to 5:00 p.m. She had actually worked from 7:00 a.m. to 5:00 p.m. on *Tuesday,* June 1, 1982, which was the first workday of that week.

8. On Monday, June 14, 1982, the plaintiff signed the departmental employees' time sheets for the May 31-June 11 period and took them to payroll. That afternoon Matthews obtained her department's time sheets. This was the first time that he had ever reviewed the time sheets for any department. Matthews testified that upon finding her 9.5 hours worked on the holiday, he believed it to be an intentional falsification. Without conducting an investigation, he recommended to Louis Bremer, the administrator, and Perry Kinder, the execu-

tive director, that Robertson be discharged immediately. They agreed. No review of her personnel file or prior work history was made prior to her discharge.

9. When Matthews called Robertson to his office that day, he first asked her if she had worked Memorial Day and she promptly replied that of course she had not because it was a holiday. He then told her of the time sheet discrepancy and said that not only had she put on it that she worked that day but also that she worked 1.5 hours of overtime. Her normal working hours were 7:00 a.m. to 3:30 p.m. Robertson then told him that she had worked to 5:00 p.m. on Tuesday and mistakenly concluded when she filled out her time sheet later that week that it was a Monday since it had been the first day of that week which she had worked. She was used to working a normal five-day week. She asked Matthews to talk to the other department employees who could verify that she had worked overtime on the Tuesday. She further explained that she had been under stress because her father was to enter the hospital the next day for cancer surgery.

No attempt was made to interview other employees of the department.

10. Tedder and Matthews testified that there was nothing in her employment history which would suggest dishonesty. Matthews stated in his deposition (plaintiff's exhibit 26) that he had never previously found her to be untruthful and that her reaction to his accusation gave him no reason to think that she was lying about the time sheet discrepancy.

11. Mauvette Phillips, a black female cardiology technician, also failed to note on her time sheet that she had taken the same Memorial Day holiday. While discussing her time sheet, Matthews asked Phillips if she had worked on that holiday and she replied that she had not. Matthews then told her about Robertson and stated that Robertson had been discharged and he had hired Rick Nation, a white male, as director of the department. The following day he called Phillips and suspended her for three days. Rick Nation began work as director of the noninvasive cardiology department on July 19, 1982. Although Matthews testified that Nation was not hired to replace Robertson, the Court finds that he performed Robertson's duties as well as some administrative duties not performed by her.

12. Ann Lee, a white employee of the department, also signed in on the Memorial Day holiday on her time sheet but discovered her error and changed it prior to the end of the week.

13. Hospital employees may take any holiday at any time from thirty days before to sixty days after the actual holiday date or may receive a day's pay in lieu of taking the holiday. Payment is not automatic, so before Robertson could benefit financially she would have had to request payment. She never requested such payment.

14. The defendant's contention that Matthews told Robertson that he must continue to sign her time sheet even after she became supervisor is not supported by the evidence. Robertson signed her own time sheet for two pay periods prior to the day of discharge and Matthews did not complain.

15. The Court finds that employees frequently make errors on their time sheets that are routinely corrected without disciplinary action being imposed. Beverly Moreland, an accounting assistant, and Sharon Rowan, a payroll clerk, who worked for the defendant testified that it was fairly common to find errors on time sheets every pay period.

16. Hospital Administrator Louis Bremer issued a memorandum on February 11, 1981, recognizing the probability of time sheet errors. (Plaintiff's exhibit 8.)

17. The Court finds that white employees who have made similar errors have not been disciplined. Ed Moody, a white male, director of maintenance, discovered that he had forgotten to record a holiday on his time sheet. The records were corrected and no discipline was imposed. Two white males, Lester Boyce and Samuel Rabeneck, employees of the material management department, failed to note on their time

sheets that they had received advance vacation pay, a violation of hospital policy. The result was that the employees received an additional pay check to which neither was entitled. They cashed the checks. The hospital comptroller allowed them to repay the double pay by withholding sums over four payroll periods. Neither employee was disciplined. This occurred in the summer of 1982.

18. In August 1982 Bee Mayfield, a white medical records employee, recorded on her time sheet that she had worked a day when she was off on vacation. She discovered her error later and the records were corrected and she was not disciplined.

19. In a letter to the EEOC dated February 15, 1982, Tedder reported that nine employees in the hospital's business office had received verbal and written warnings for "time sheet abusal." (Plaintiff's exhibit 25.) Six of the nine were white.

20. Bob Criswell, a white male, testified that when he was director of building services for the hospital he was accused by the administrator of falsifying an employee's time sheet by having her work for a private business while she was being paid by the hospital. He testified that he was told that he was being suspended without pay pending an investigation. Later that day he resigned and received two weeks' separation pay. He was not disciplined.

■ 21. The Court finds that Robertson's discipline greatly exceeds that imposed on white employees and the only reasonable conclusion to be drawn from the evidence is that race was a motivating factor.

22. During the trial the defendant introduced hospital records in an attempt to prove that the plaintiff had previously taken a birthday holiday to which she was not entitled and had taken sick leave to apply for a loan. Even if the Court assumed these allegations to be true, Tedder testified that hospital officials became aware of these incidents during trial preparation. They are certainly not persuasive on the issue of the propriety of defendant's discharge of the plaintiff since the hospital officials were not aware of them when they fired Robertson.

■ 23. At the time of her discharge plaintiff was earning $7.54 per hour with an additional 10% differential for performing supervisory duties. At the time of her annual evaluation, she would have received a 4% or 30-cent wage increase, provided she had received a satisfactory evaluation. There has been no evidence to show that she would have received anything other than a satisfactory evaluation. On November 15, 1982, plaintiff was hired by Rebsamen Memorial Hospital at a salary of $6.01 per hour. On January 1, 1983, she received a raise to $6.25 per hour. Defendant is directed to pay to the plaintiff back pay and other benefits to which she would be entitled had she remained an employee of Doctors Hospital minus her earnings at Rebsamen. No deduction from back pay shall be made for unemployment compensation. Defendant is directed to reinstate plaintiff within sixty days of the filing of these Findings at a salary equal to what she would have been earning except for the wrongful discharge. The back-pay award is to accumulate from the date of discharge until the date of reinstatement or waiver thereof by the plaintiff.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and the parties to this action pursuant to 42 U.S.C. § 2000e, *et seq.,* and 42 U.S.C. § 1981.

2. The plaintiff has met her burden of proving by a preponderance of the evidence a prima facie case of racial discrimination.

3. The Court concludes that plaintiff, a black female, belonged to a protected group, performed her work satisfactorily and was discharged. *Johnson v. Bunny Bread Co.,* 646 F.2d 1250 (8th Cir.1981).

4. The defendant articulated a legitimate nondiscriminatory reason for the discharge. However, having found that the plaintiff did not intentionally falsify her time sheet and that hospital officials could

not have reasonably concluded that she did, the Court finds that the plaintiff proved that the defendant's proffered reason was pretextual. *Texas Department of Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

5. The plaintiff has met her burden of proving that the defendant intentionally discriminated against her because of her race in violation of Title VII and 42 U.S.C. § 1981.

IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED:

That plaintiff Mary Robertson is entitled to judgment against defendant Doctors Hospital on her complaint as amended. The defendant is ordered to reinstate plaintiff with back pay as stated hereinabove. Plaintiff is awarded her costs and attorney's fees. Her attorney is directed to submit an affidavit detailing the time spent and hourly charge for this case. The defendant is hereby enjoined from discharging employees because of their race.