14 F.3d 599
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Robert WILSON, Plaintiff-Appellant,
v.
MILLIKEN & COMPANY, Defendant-Appellee.
 No. 93-1285.
 United States Court of Appeals, Fourth Circuit.
 Dec. 8, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Henry M. Herlong, Jr., District Judge.
 Benjamin M. Mabry, Columbia, SC
 James Gordon Carpenter, Greenville, SC
 James Lewis Mann Cromer, Columbia, SC
 Robert T. Thompson, Greenville, SC
 D.S.C.
 AFFIRMED.
 Before PHILLIPS and WILKINSON, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Robert Wilson appeals the district court's dismissal by summary judgment of his alternative claims for retaliatory discharge and constructive discharge on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e et seq. (1988 & Supp. III). The district court granted summary judgment in favor of Wilson's former employer, Milliken & Company, on the grounds that Wilson's forecast of evidence failed to present a genuine issue of fact as to either claim and that Milliken was entitled to judgment as a matter of law on each. We affirm, agreeing that Wilson's forecast of evidence failed at the prima facie case stage on each claim.
 
 
 2
 * Milliken & Company ("Milliken") dyes and finishes uniform style and high fashion apparel fabrics. Milliken hired Robert Wilson, a black man, in June of 1974. During the approximately seventeen years Wilson worked for Milliken, he held various positions in the company. Beginning as a management trainee, Wilson was promoted to production manager and eventually to department manager in the company's finishing department. In 1981, Wilson transferred from the manufacturing section to Human Resources where he held a position similar to a department manager. In 1986, Milliken placed Wilson on a corporate task force, where he worked for over a year. When the task force completed its work, Wilson asked to return to the manufacturing section. For this reason, Milliken placed Wilson in a transitional position called "Career Change", where he remained until he was discharged in April of 1991.
 
 
 3
 In late 1990, Milliken decided to downsize its work force by reducing the number of managerial positions through natural attrition and eliminating the Career Change category. Wilson wanted to be moved from Career Change into either the position of a department manager or a superintendent. On April 22, 1991, Milliken instead offered Wilson a production manager position in its finishing department. Milliken's offer amounted to a demotion; Wilson held a similar position fourteen years earlier. Clearly, the position offered Wilson was a lower level position than he had requested, as well as a lower level position than he held before working on the task force. By accepting the position, however, Wilson would not have suffered a loss in pay, job grade, or benefits.
 
 
 4
 To explain his decision to offer Wilson the production manager position, Jim Egan, the plant manager, claimed the Magnolia plant where Wilson worked in 1991 was a more complex operation than the plant where he was employed in the early 1980s. Milliken gave two additional reasons for the decision. First, while in Career Change, Wilson received performance reports suggesting that he was not ready for a department manager position. Second, Ed Lewis, who had held the position offered to Wilson, was better suited in another department. By transferring Lewis into this other department, Milliken created an opening for Wilson in a department in which he had experience.
 
 
 5
 As a result of Milliken's downsizing efforts, two other Milliken employees, both white, were given the option of accepting demotions. One employee, who had been a supply room manager, was offered an hourly job in the same department. She refused and quit. Another employee, who held a position at the department manager level, was offered a production manager position, a proposal similar to that made Wilson. The employee accepted the position.
 
 
 6
 Wilson claims that racially discriminatory motives were the basis for the proposed demotion. His evidence consists of various events that occurred while he was in Career Change. In 1988, a white supervisor referred to Wilson three times as "Flip Wilson". That same year, Wilson asked Egan why he was not allowed to have lunch outside the plant as other managers were. Egan responded, "Listen, Boy, you'll do as you are told and your arrogance will not be tolerated." Finally, Claude Pruitt, a plant manager, referred to another Milliken employee as a "spook" in Wilson's presence. Wilson also emphasizes that Mike Smith, a personnel manager, allegedly maintained a confidential file about him. Smith acknowledged that a file was kept, but insisted that it contained information about other employees as well.
 
 
 7
 Milliken allowed Wilson a week to decide whether to accept the production manager position. During this period, Wilson inquired as to the consequences if he refused the offer. Egan apparently responded that Milliken "could not keep the career change slot anymore and [the production manager position] was his option," J.A. at 89, but did not explicitly inform Wilson that he would be discharged. At the end of the week, Wilson submitted a letter to Egan essentially informing Egan that he refused to accept a position that amounted to a demotion. If Milliken had directed him to accept the position instead of offering it to him, Wilson testified he would have taken the position. J.A. at 58.
 
 
 8
 Wilson filed this suit alleging alternatively retaliatory discharge and constructive discharge in violation of Title VII.[1] After discovery, the district court granted Milliken's motion for summary judgment on the grounds that Wilson failed to present a prima facie case of either constructive or retaliatory discharge on the basis of race. The district court further found that the grant of summary judgment was appropriate because Milliken articulated a legitimate nondiscriminatory basis for its actions and Wilson did not rebut the reasons as pretextual.
 
 This appeal followed.[2]
 II
 
 9
 We first consider whether Wilson's proffered evidence made out a prima facie case of retaliatory discharge. Under Title VII, it is unlawful for an employer to retaliate against an employee who has opposed an employment practice prohibited by the statute. 42 U.S.C. Sec. 2000e-3(a). A prima facie "opposition clause" case requires proof that (1) the employee engaged in protected activity; (2) the employer took adverse action against him; and (3) a causal connection exists between the protected activity and the adverse action. Dwyer v. Smith, 867 F.2d 184, 190-91 (4th Cir.1989).
 
 
 10
 Wilson's forecast of evidence plainly failed to establish the first element--that he was engaged in a protected activity. Wilson claims that Milliken had racially discriminatory motives for offering him the production manager position and argues that his refusal to accept the position was therefore a protected activity. Refusing to work is not a protected activity. "[The opposition clause] was not intended to immunize insubordinate, disruptive, or nonproductive behavior at work.... An employer must retain the power to discipline and discharge disobedient employees." Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir.1981) (citations omitted); see Hazel v. U.S. Postmaster Gen., 63 Fair Empl. Prac. Cas. (BNA) 43 (1st Cir. Oct. 14, 1993) ("[T]he right to oppose discrimination is not a right to refuse work on account of discrimination."). The right to oppose what the employee reasonably believes is discriminatory activity is not absolute.
 
 
 11
 "[C]ourts have in each case to balance the purpose of the Act to protect persons engaging reasonably in activities opposing ... discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel."
 
 
 12
 Armstrong, 647 F.2d at 448 (quoting Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 231 (1st Cir.1976)). Wilson could have accepted the new position and still raised his charge of racial discrimination under Title VII.
 
 
 13
 Despite Wilson's assertions to the contrary, the facts of Armstrong v. Index Journal Co., 647 F.2d 441, are distinguishable from those of the present case. In Armstrong, the court concluded that the employee had established a prima facie case of retaliatory discharge. The female salesperson was fired after she refused to work on a low-paying account which she believed she was assigned because of her sex.
 
 
 14
 Unlike Wilson, the employee had previously voiced numerous complaints about receiving lower pay on the basis of her sex. In essence, the evidence showed that the employee was discharged not for refusing to work, but because of her complaints. Wilson's only act of opposition was his refusal of the position. Not having engaged in any protected activity, Wilson fails to establish a prima facie case of retaliatory discharge. We need not review the remaining elements of a prima facie case.
 
 
 15
 We next consider Wilson's alternative claim of constructive discharge. Milliken argues that by refusing to accept the new position, Wilson constructively resigned. Wilson responds that if Milliken is correct, he was constructively discharged in violation of 42 U.S.C. Sec. 2000e-2(a)(1). To prove constructive discharge, an employee must establish both intolerable working conditions and a deliberate effort by the employer to force the employee to quit. Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.1985), cert. denied, 475 U.S. 1082 (1986); Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir.1984), cert. denied, 470 U.S. 1028 (1985). Wilson has not forecast sufficient evidence to create a genuine issue as to this material factual element of his claim.
 
 
 16
 Working conditions are considered intolerable when a reasonable person would feel compelled to resign. Bristow, 770 F.2d at 1255. A constructive discharge claim, however, does not shelter employees from the disappointments and frustrations which accompany any job. A demotion is certainly both disappointing and potentially embarrassing, but, standing alone, it does not amount to intolerable employment conditions. Wilson would have suffered no loss in pay or benefits on account of the demotion. The fact that another Milliken employee accepted an offer similar to Wilson's is further evidence that the working conditions were not intolerable in the required sense.
 
 
 17
 Wilson's proffered evidence also fails to show any intent by Milliken to force him to quit. Direct evidence of a deliberate effort is not required. Circumstantial evidence of intent is sufficient, "including a series of actions that single out a plaintiff for differential treatment." Johnson v. Shalala, 991 F.2d 126, 131 (4th Cir.1993), petition for cert. filed, 62 U.S.L.W. 3149 (U.S. Aug. 16, 1993) (No. 93-248) (citing Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir.1981) ("fact that all employees were treated identically rebuts any inference" of constructive discharge)). But not even that sort of circumstantial evidence was proffered here. Two other Milliken employees, both white, were made offers similar to Wilson's as a result of the company's downsizing efforts. In light of this evidence, Wilson has failed to demonstrate any intent by Milliken to single him out in an effort to force him to resign. For this reason and because of his failure to show intolerable work conditions, Wilson has failed to demonstrate the existence of a genuine issue of material fact sufficient to forestall summary judgment on his constructive discharge claim.
 
 
 18
 Viewing the forecast evidence in the light most favorable to Wilson, we agree with the district court that Milliken was entitled to summary judgment on both Wilson's Title VII claims.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Wilson joined other claims with his Title VII cause of action. He voluntarily dismissed his age discrimination claim and did not appeal the dismissal of the remaining claims
 
 
 [2]
 Counsel for Wilson conceded at oral arguments before this court that Wilson's brief improperly cited portions of Wilson's deposition. Regardless of whether those sections of Wilson's depositions are considered by this court, we find that the district court properly granted Milliken's motion for summary judgment